UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ERICA L. MUGICA, et al., | ) |
| | ) |
| Plaintiffs, | ) No. 13-CV-0129-JLQ |
| | ) |
| vs. | ) MEMORANDUM OPINION |
| | ) AND ORDER RE: MOTION |
| | ) FOR SUMMARY JUDGMENT |
| | ) |
| SPOKANE COUNTY, et al, | ) |
| | ) |
| Defendants. | ) |

BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No. 50). Response and Reply briefs have been filed. (ECF No. 62 & 67). The court heard oral argument on August 12, 2014. Richard Wall appeared for Plaintiffs. Heather Yakely argued the Motion on behalf of Defendants.

**I. Procedural History**

This action was commenced by the filing of a Complaint on March 28, 2013. Pursuant to Plaintiffs' Motion, the court appointed Phillip Wetzel as guardian ad litem for the minor Plaintiffs. (ECF No. 10). An Amended Complaint was filed on July 3, 2013. (ECF No. 16). Plaintiffs bring claims of excessive force, unlawful detention, violation of Due Process, and failure to train pursuant to 42 U.S.C. § 1983. Plaintiffs also assert state law claims of intentional infliction of emotional distress and damage to real property. Defendants filed an Answer denying these allegations and counterclaimed pursuant to RCW § 4.24.350 asserting that Plaintiffs' claims are frivolous and that pursuing the action constitutes malicious prosecution. Plaintiffs did not file a response to the counterclaim.

The court held a Scheduling Conference and issued a Scheduling Order on May 24, 2013. The parties filed several motions pertaining to expert discovery and mental health records. The court issued rulings on those motions, and discovery is now closed. The

ORDER - 1

parties also filed a Motion to Continue trial date, which was granted in part.  The matter is set for jury trial on September 9, 2014.

## II.  Factual Background

In summary judgment proceedings, the facts are viewed in a light most favorable to the non-movant.  Plaintiff disputes only three of the factual statements by Defendants. (ECF No. 63, p. 9).   The following facts are largely undisputed.  If there is a dispute, it is noted.

Plaintiff Erica Mugica, and her four minor children, ages three to nine, were at home asleep on February 14, 2012, at approximately 6:20 a.m.  Mugica was in a personal relationship with Victor Luna, and he is the father of three of the children.  Luna lived with Mugica part of the time and was present in the Mugica residence the morning of February 14, 2012.

Defendants arrived that morning to execute a search warrant on the Mugica residence.  They knew Luna was a convicted felon, and believed that he had gang ties. Luna was also a suspect in a December 2011 burglary in which several firearms were stolen.  Defendants also had information that Mugica had a prior fourth degree assault conviction.  After performing a Risk Assessment, Defendants determined that a SWAT team should be utilized in executing the search warrant.  After allegedly performing a "knock and announce," the SWAT team breached two doors to the home at the same time, using a "ram strike". (ECF No. 51, ¶ 11-13).  At approximately the same time, Deputy Moyer broke out a basement window to the bedroom in which Luna and Mugica were sleeping, and deployed a Noise-Flash Distraction Device ("NFDD"). (*Id*. at ¶ 13).

Mr. Luna was asked by two SWAT members to come to the top of the stairs.  He complied and was detained and handcuffed without incident. (*Id*. at ¶19).  Ms. Mugica and three of the minor children were also asked to come upstairs.  They were in the basement for approximately 3 minutes.  In directing the young children, "SWAT members were particularly reserved in their demeanor and did not yell or raise their voices." (*Id*. at ¶¶ 20-23).   The SWAT team completed their sweep of the scene in seven

minutes, and left the scene at approximately 6:35 a.m. (*Id.* at ¶ 26-27).

After SWAT cleared the scene, Detective Hixson informed Mugica that she and the children were free to leave the home while the search of the residence took place. Ms. Mugica declined to leave. (*Id.* at ¶29-30). Ms. Mugica and the children were asked to stay in the living room and monitored by Detective Blashill while the search was conducted. None of the Detectives or Investigators acted aggressively, spoke loudly, or intimidated Ms. Mugica. (*Id.* at ¶33). It is undisputed that neither Ms. Mugica or any of her four children suffered any physical injury during the execution of the warrant.

Plaintiffs dispute only three of Defendant's 35 Statements of Fact. (ECF No. 63, p. 9). Plaintiffs dispute that the SWAT team risk assessment "required" the use of the SWAT team. Plaintiffs dispute Defendant's Statement of Fact #25 that the use of the SWAT team was a "minimal intrusion", and dispute a portion of Defendant's Fact #35 that Ms. Mugica was "part of the investigation" into Mr. Luna's alleged criminal activities. Plaintiffs also provide their own statement of 40 facts in opposition to summary judgment. (ECF No. 63).

Plaintiffs claim the Defendants used excessive and unreasonable force when the SWAT team entered the Mugica residence. Plaintiffs contend that the SWAT team Risk Assessment did not take into account that small children would be present. (P's Facts ¶ 10). Plaintiffs also set forth facts alleging that Mr. Luna went to the grocery store in the early morning hours before the SWAT raid. (P's Facts ¶ 20-22). Mr. Luna states that he saw something that "looked like a tin can" come through the bedroom window, and there was an "explosion inside the room". (P's Fact 25). Defendants' contend the noise flash distraction device was deployed outside the bedroom window. (Deft's Fact 13). Mr. Luna states that an assault rifle was pointed at him, and that he saw "red dots of light" on Ms. Mugica and one of the children. (P's Fact 27 & 28). Ms. Mugica also states that she saw "red dots from laser sights on herself and her children." (P's Fact 37). Defendants' Statement of Facts does not directly deny that weapons were pointed at Ms. Mugica and her children, although individual Defendants have filed affidavits disputing that

allegation.  Defendants' Statement of Facts claims that SWAT is trained to keep their weapons in the "low ready" position (pointed at the ground), trained to never point at a person unless the intent is to fire, and that only two of the officers on the SWAT team had laser pointers. (Deft's Facts 15-18).  There was no arrest warrant for Mr. Luna.

**III. Discussion**

**A. Defendants' Argument for Summary Judgment**

Defendants argue that there is no evidence of excessive force, and the individually named Defendants are entitled to qualified immunity.  Defendants argue the use of force was objectively reasonable, and that "there was no direct physical contact, but rather a show of force." (ECF No. 50, p. 7). Defendants also argue there was no unreasonable detention, because Plaintiffs chose to stay in their home during the execution of the search warrant.  Defendants further argue that Plaintiffs have produced no evidence to support the failure to train claim against Spokane County.  Spokane County argues that municipal liability cannot be based on one incident, and that there is no causal link demonstrated between an alleged lack of training and constitutional injury.  Lastly, Defendants briefly argue that the state law claims must fail.  Defendants argue that the SWAT team conduct does not support the tort claim of outrage, and that "there is no claim pursuant to Washington State law" for intentional/negligent damage to real or personal property.

**B. Plaintiffs' Argument in Opposition**

Plaintiffs argue the force used was objectively unreasonable.  Plaintiffs rely on cases stating that in excessive force cases, the inquiry is often factual and summary judgment should be rarely granted.  Plaintiffs' factual recitation of the SWAT raid is quite detailed, portraying a scene that was allegedly frightening, although Ms. Mugica admits that neither she or her children suffered any physical injury.  Plaintiffs argue that the need to execute the search warrant, take Mr. Luna into custody without an arrest warrant was "minimal, " and there was a high likelihood of injury to Plaintiffs. (ECF No. 62, p. 13). As to County policy, Plaintiffs argue that the SWAT team risk assessment failed to

ORDER - 4

properly account for the presence of young children.

### C. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(citations and quotations omitted).

/ /

ORDER - 5

### D.  Qualified Immunity

The Ninth Circuit recently set forth the framework for qualified immunity analysis as follows: "Government officials are not entitled to qualified immunity if: 1) the facts taken in the light most favorable to the party asserting the injury ... show that the defendants' conduct violated a constitutional right and 2) the right was clearly established at the time of the alleged injury." *Sandoval v. Las Vegas Metro Police*, __ F.3d __ (9th Cir. July 1, 2014) citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Stated otherwise, if there is no constitutional violation or the right was not clearly established, Defendants are then entitled to qualified immunity.  Whether the Defendants violated a constitutional right and whether the right was clearly established at the time of the alleged violation are questions of law.  *Id.*

### E.  Excessive Force

The primary federal claim in this action is that use of the SWAT team to forcefully enter the Mugica residence, breaking down doors, deploying an NFDD, and pointing weapons at Mugica and her four minor children during the execution of a search warrant constituted excessive force.  A show of force, such as pointing a firearm at a suspect, depending on the factual circumstances, can constitute excessive force.  See *Robinson v. Solano County*, 278 F.3d 1007, 1014 (9th Cir. 2002).  The Ninth Circuit has stated: "We have held that the pointing of a gun at someone may constitute excessive force, even if it does not cause physical injury." *Tekle v. United States*, 511 F.3d 839, 845 (9th Cir. 2007).  The use of a flash-bang distraction device can, depending on the factual circumstances, constitute excessive force.  See *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004).  In *Boyd*, the device was thrown onto a sleeping individual who suffered physical injury when the device ignited.

The analysis under the Fourth Amendment is whether the use of force was reasonable.  Making the reasonableness determination "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The reasonableness inquiry is an objective test: "whether the officers' actions

are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.  In determining whether the force used was excessive, the court looks at the severity of the force used and the need for force. *Tekle  v. United States*, 511 F.3d 839, 844 (9th Cir. 2007).  In evaluating the need for force, the court may look to the severity of any crime at issue, whether a suspect poses an immediate threat, and whether a suspect is actively resisting or attempting to evade arrest. *Id.*

        The facts in this case are disputed as to whether the SWAT team aimed their firearms at Plaintiffs.  Both Plaintiff Mugica and Mr. Luna have filed Declarations stating that they observed red-dots from laser pointers on Ms. Mugica and the children. Defendants have also filed Affidavits.  Defendant L. Petersen states he did not have a laser pointer on his firearm and never pointed the firearm at anyone on the morning in question. (ECF No. 53).  Defendant S. Bonney states he had a laser pointer, but did not point his weapon at anyone, and had no physical interaction with anyone on that day other than Mr. Luna. (ECF No. 54). Defendant Jeffrey Mitchell states he had no laser pointer and did not point his gun at anyone. (ECF No. 55).  Defendant R. Walter states he did not have a laser pointer, did not point gun at anyone, and did not have contact with any of the Plaintiffs during the SWAT raid. (ECF No. 56).  Defendant P. Pfeifer avers he did not have a laser pointer and did not point his weapon at anyone. (ECF No. 61). Viewing this evidence in a light most favorable to Plaintiffs, firearms with laser pointers were pointed at them at some point during the initial SWAT sweep.  Defendants' assert, and Plaintiffs do not dispute, that this initial SWAT sweep was completed in approximately seven minutes.  There is no contention by Plaintiffs that either Ms. Mugica or any of her minor children were forced to the ground or handcuffed.

        As to the use of the NFDD, Mr. Luna's Declaration states that he saw "something that looked like a tin can come in through the broken window" and that he "heard an explosion inside the room." (ECF No. 66, ¶ 7).  Deputy Moyer stated at his deposition that the NFDD was detonated at a distance of about eight feet outside the window. (ECF

No. 52).  At oral argument, Plaintiffs' counsel contended that a question of fact existed as to whether the NFDD was detonated inside the bedroom.  Viewing the facts in a light most favorable to Plaintiff, the NFDD was deployed in the bedroom. Throwing and detonating a NFDD in a bedroom where people are sleeping would constitute excessive force under the circumstances of this case.

On the excessive force claim, Plaintiffs have demonstrated a dispute as to material facts and the Motion for Summary Judgment on that claim must be **DENIED**.

### F.  Unlawful Detention

Plaintiffs have failed to dispute the facts that almost immediately after SWAT cleared the scene, which was approximately 7 minutes after they arrived on scene**,** Ms. Mugica was told that she and her children could leave the home and that they were free to do so. (D's Facts 26, 27, 29, 30).  Plaintiffs have presented no evidence to support a claim that they were unlawfully detained in violation of the Fourth Amendment. See also *Muehler v. Mena*, 544 U.S. 93 (2005)(detention of occupant of home during execution of search warrant for 2-3 hours in handcuffs was objectively reasonable).  Defendants' Motion for Summary Judgment on this claim is **GRANTED**.

### G.  Violation of Due Process

Plaintiffs assert a claim for violation of Due Process in paragraph 24 of the Amended Complaint and allege that Defendants' actions were "arbitrary and capricious." Defendants argue this claim must fail because it is undisputed that the search warrant was properly issued.  Plaintiffs' Response (ECF No. 62) does not explain how the Due Process claim is distinct from the claims of excessive force and unlawful detention under the Fourth Amendment.  In reviewing an excessive force case, the Supreme Court has stated: "[B]ecause the Fourth Amendment provides an explicit textual source of constitutional protection...the Fourth Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Additionally, a substantive due process violation is more difficult to establish than an excessive force claim.  The conduct in question must "shock the

conscience" and "violate the decencies of civilized conduct." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  "Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849.  The Plaintiffs' claims of excessive force and unlawful detention are more appropriately analyzed under the Fourth Amendment rather than the Fourteenth Amendment's due process provisions.  Defendants' Motion for Summary Judgment on this claim is **GRANTED**.

### H.  Failure to Adequately Train and Supervise

Spokane County, a municipality, is not liable under § 1983 for the acts of its employees on the basis of respondeat superior liability. *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 691 (1978).  A municipality is only liable if the constitutional violation is the result of an official policy or custom. *Id.* at 694 ("It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

The Supreme Court has stated that "there are limited circumstances in which an allegation of a failure to train can be the basis for liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).   A claim that Spokane County failed to adequately train its officers, may serve as the basis for liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388.

The Amended Complaint does not specifically allege what policy or custom or failure to train allegedly caused harm to Plaintiffs.  Rather, it vaguely alleges that "policies and procedures" were a "direct and proximate cause of the violations of Plaintiffs' civil rights". (Am.Complt. ¶ 25).  The policy/training argument made in Plaintiffs' Response (ECF No. 62) appears to be that the presence of children at a residence at the time of a SWAT raid was not adequately considered.  Plaintiffs state: "No training was provided to Deputy Hubbell that he was to give consideration to other

alternatives for serving the warrant when it was known that young children would be present during a SWAT raid." (ECF No. 62, p. 17).  The fact that children would be present was considered.  The Risk Analysis Score Sheet utilized in determining whether to use the SWAT team had the box checked that children would be present. (ECF No. 64-7).  The Sheriff's Office had a standard policy if children are encountered:  "Children:  If young children are encountered and not a threat to the officers or others the officer locating the young child will remain with the child to lessen the trauma and prevent the child from moving around the structure/area until the structure is secure." (ECF No. 64-8).  The Field Operation Plan for the SWAT raid herein stated that "four children between the ages of 3-10 years of age are residing at the residence." (ECF No. 64-8).

Deputy Brett Hubbell testified that he was aware children would be present when the search warrant was executed and that the presence of children was discussed at the pre-raid briefing at approximately 4:30 a.m. (ECF No. 64-2).  Jay McNall, a supervisory Sergeant assigned to the SWAT team, testified that they considered children would be present at the Mugica residence and that information impacted the Field Operation Plan. He testified that when children are present they would not deploy a NFDD inside the house, and they do not use "explosive breaching" or "chemical agents". (ECF No. 64-3).

Plaintiffs have not presented any evidence of an unconstitutional policy or custom. Nor have they presented evidence that a custom or policy of the County caused the alleged Constitutional violation.  Plaintiffs have also failed to offer evidence to support a claim that the training of the SWAT team did not consider whether children would be present at the site where the warrant was to be executed.  Defendants' Motion for Summary Judgment as to this claim is **GRANTED**.

### I.  Outrage/Intentional Infliction of Emotional Distress

The state law tort of outrage is synonymous with intentional infliction of emotional distress.  The tort of outrage requires proof of three elements: 1) extreme and outrageous conduct; 2) intentional or reckless infliction of emotional distress; and 3) actual result to plaintiff of severe emotional distress. *Kloepfel v. Bokor*, 149 Wash.2d 192, 195 (2003).

The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 196.  The tort of outrage "does not extend to mere insults, indignities, annoyances, petty oppressions, or other trivialities." *Id.*  A plaintiff must be "hardened to a certain degree of rough language, unkindness and lack of consideration." *Id.*

Defendants argue that Plaintiffs cannot meet this first element.  "Whether conduct is sufficiently outrageous is ordinarily a question for the jury, but initially it is the responsibility of the court to determine if reasonable minds could differ on whether the conduct was so extreme as to result in liability." *Keates v. City of Vancouver*, 73 Wash.App. 257, 263 (Wash. App. 1994).  The court finds, viewing the facts in a light most favorable to Plaintiffs, that a reasonable jury could find that Defendants' conduct was so extreme and outrageous as to support the tort claim of outrage.  In a light most favorable to Plaintiffs, nearly 20 law enforcement officers, armed with firearms (some with laser pointers), breached two doors of the Mugica residence with battering rams in the pre-dawn hours, threw or exploded the NFDD device in the bedroom, and aimed firearms at four children between the ages of 3 and 10, all in aid of a search warrant for stolen property.

Defendants' Motion for Summary Judgment on this claim is **DENIED**.

## J.  Damage to Real and Personal Property

Plaintiffs allege that Defendants "intentionally, recklessly, and or negligently caused damage to personal and real property of Plaintiff Erica Mugica." (Am. Complt. ¶ 27).  Defendants contend that such a claim does not exist under Washington state law. (ECF No. 50, p. 19).  Plaintiffs do not directly respond to the argument that there is no such cause of action, but state in Response that the home was "severely damaged" (ECF No. 62, p. 6).  It appears that two doors were breached, and a window was broken.

At oral argument, defense counsel agreed that if Plaintiffs prevail on the excessive force claim, they could recover property damage as part of that claim.  Courts considering

ORDER - 11

this issue have found that on some occasions property damage is unavoidable during the execution of a warrant, but where it is excessive or unnecessary it is compensable. See *Liston v. County of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997)("officers executing a search warrant occasionally must damage property in order to perform their duty.") citing *Dalia v. United States*, 441 U.S. 238, 258 (1979); *United States v. Ramirez*, 523 U.S. 65, 71 (1998)("Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment...").  Defendants' Motion for Summary Judgment on this claim is **DENIED**

**IT IS HEREBY ORDERED**:

1.  Defendants' Motion for Summary Judgment (ECF No. 50) is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

2.  The final Pretrial Conference is set for **August 28, 2014, at 11:00 a.m.**

3.  The jury trial remains set for September 9, 2014.  The other pretrial deadlines are as set in this court's prior Order (ECF No. 44).

**IT IS SO ORDERED**.  The Clerk is hereby directed to enter this Order and furnish copies to counsel.

  **DATED** this 19th day of August, 2014.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE